## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MATTHEW TIMOTHY MCCULLOUGH     :
#325-499, *pro se*,
      Petitioner                :

     v.                            :       CIVIL NO. WDQ-09-0039

NANCY ROUSE, Warden, *et al.*,         :
      Respondents

### MEMORANDUM

Pending is Matthew Timothy McCullough's[1] *pro se* 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus challenging his conviction and sentence on four counts of first-degree assault in the Circuit Court for Baltimore County. The case has been fully briefed, and no evidentiary hearing is necessary. For the following reasons, relief will be DENIED.

### Facts

The Court of Special Appeals of Maryland summarized the crimes for which McCullough was convicted as follows:

> The sociopathically terroristic crime spree initiated by the appellant had its origins on Tuesday, May 4, 2004, when, during the lunch recess at Randallstown High School, a fellow student, Martise Williams, called the appellant a "bitch." Aware over the course of the next several days of an escalating controversy, school officials attempted to calm the waters. On Thursday, May 6, school administrators and teachers held a conference attended by the appellant and his mother, by Martise Williams, and by Torian Dean (an adherent of Martise Williams) and his mother. All efforts at detente collapsed, however, when, at the end of the conference, the appellant refused to shake hands and "say it was all over."

> On Friday afternoon, May 7, an annual charity basketball game was held at the school between a faculty team and a team of community leaders. The appellant had been ordered by school officials not to be on school grounds

---

[1]McCullough is confined at the Roxbury Correctional Institution where the warden is Gregg Hershberger. Hershberger is McCullough's custodian and will be substituted for Nancy Rouse as a respondent. *See* Rule 2(a), 28 U.S.C. folio. § 2254; Fed. R. Civ. P. 25(d)(1).

on that Friday. During the course of the basketball game, however, a school resource officer "was informed that [the appellant] had returned to the area and was looking to possibly start a fight." The resource officer, the head football coach, and the father of Martise Williams all spoke to the appellant "to try to resolve the situation." The appellant and three companions who had accompanied him to the school left in a Lincoln automobile.

At about the time that the basketball game was concluding, the appellant had returned to the school in a gold Honda Civic. His three companions arrived simultaneously in a black BMW. The four then walked together "towards the school where a group of kids were hanging out on the sidewalk." A teacher who was present described what happened as the appellant and his companions approached the group of students, "A few words were exchanged, a punch was thrown, and there was a fight." The teacher described how the initial tide of battle began to turn against the appellant's group, "It's 30, 40 kids, four individuals so somebody was losing. Those four were losing the fight."

One of the appellant's companions, Tyrone "Fat Boy" Brown, retreated to the BMW, parked on the school parking lot, and returned with a 9 mm. Luger Glock. First "Fat Boy" and then the appellant fired a total of twelve shots, ultimately wounding seriously four students. Andre Mellerson was shot in the arm. Alexander Brown was shot in the shoulder. Marcus McLain was shot in the leg. William "Tipper" Thomas, III, a senior who played wide receiver on the school football team, was shot in the back of the neck as he went to help a girl who had fallen to the ground. He was left paralyzed from the chest down. Three separate students testified that they saw the appellant firing the gun.

Paper No. 17, Exhibit 4 at 1-3. The jury convicted McCullough of four counts of first-degree assault, but acquitted him of attempted murder and associated handgun charges. *Id*. at 1.

At the January 27, 2005 sentencing, George Charlsen, who prepared the presentence report, testified about the contents of the report, such as its inclusion of McCullough's statement to Charlsen that he did not deserve to be in jail because he "beat the attempted murder rap" and the handgun charge. Exhibit 17, at 18-19, 21. During its sentencing argument, the State noted that the other shooter, Tyrone "Fat Boy" Brown, pled guilty to attempted second-degree murder and received a 50-year sentence. The State argued that McCullough deserved a more severe

sentence as he instigated and involved others, including Brown, in the dispute. *Id*. at 36-42.

Through letters and live witnesses, the defense presented 27 testimonials to McCullough's

positive qualities. *Id*. at 56-104. Recognizing that a significant sentence was likely, the defense

focused its efforts on assuring the court that McCullough was amenable to rehabilitation, had a

substantial support network, and could therefore rejoin society as a responsible, productive, and

law-abiding citizen. *Id*. The trial court nonetheless sentenced McCullough to 25 years in prison

for each count of first-degree assault, with the sentences to be served consecutively. *Id*. at 104-

10.

## PROCEDURAL BACKGROUND

### (i) Direct Appeal

In his direct appeal to the Court of Special Appeals, McCullough, through counsel,

alleged he was entitled to a new trial or a new sentencing hearing because:

1.    he was erroneously denied the opportunity to cross-examine an
individual who was presented to the jury for purposes of identification;

2.    the State failed to make timely disclosure of a witness who identified
him;

3     the State shifted to him the burden of proving
his innocence;

4.    he was prejudiced by the erroneous admission of a mug shot
photograph of him; and

5.    his sentence constituted cruel and unusual punishment.

Paper No. 17, Exhibit 4 at 1; *see also* Exhibits 2-3. On November 28, 2005, the Court of Special

Appeals affirmed McCullough's convictions, finding that the act of displaying McCullough's

brother to the jury for identification purposes was not testimonial and did not implicate the Fifth

Amendment privilege or the Sixth Amendment right to confrontation.  *Id.*, Exhibit 4 at 4.  The court determined that the State's discovery was sufficient to disclose that fellow student Judah Green had identified McCullough as a shooter, and that McCullough had sufficient time to investigate this evidence before it was presented at trial.  *Id.* at 6. The court found no improper burden shifting by the prosecution, and also found no error with the introduction of McCullough's mug shot, given that it was taken on the day of the crime, and not in conjunction with an arrest for prior unrelated criminal activity. *Id.* at 8-9.  Finally, the court upheld McCullough's sentence, finding "no remote error." *Id.* at 9-12.

After a request for reconsideration was denied, *see* Exhibit 4 (mandate); Exhibit 5, McCullough filed a petition for a writ of certiorari presenting three claims:

1. Did the trial court err when it ruled that the State had complied with the pretrial identification disclosure requirements of Maryland Rule 4-263 and allowed a key State's witness to testify about a pretrial identification of McCullough, even though the State had never disclosed prior to trial that the witness had identified him?

2. Did McCullough's punishment of four consecutive twenty-five year sentences amount to cruel and unusual punishment, and was it based on impermissible factors, in violation of the Eighth Amendment to the United States Constitution and Articles 16 and 25 of The Maryland Declaration of Rights, and did the trial court err when it failed to consider the appropriate mitigating factors before sentencing him?

3. By allowing the State to present non-verbal "testimony" of Michael McCullough that tended to inculpate Petitioner as a shooter, and denying Petitioner the right to cross-examine on the content of this "testimony," did the trial court deny Petitioner's right to confront witnesses against him, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 21 of the Maryland Declaration of Rights?

Paper No. 17, Exhibit 6. Certiorari was denied on April 14, 2006, and McCullough's request for reconsideration was denied on June 16, 2006.  *Id.*,  Exhibits 7-9.

(ii) Reduction of Sentence

Between the time the appeal was noted and when it was heard, McCullough also sought relief from his sentence in the Circuit Court for Baltimore County. *Id*. On February 8, 2005, he filed an application for review of sentence, requesting "a sentence proportionate with other persons convicted of First Degree Assault who have no prior criminal record." *Id*., Exhibit 23 at 3. The application was denied by a three-judge panel on May 11, 2005. The order of denial stated: "It is the unanimous decision of the Panel that the sentence imposed in this case was appropriate and reasonable." *Id.,* Exhibit 24. On April 21, 2005, McCullough filed a motion for modification of sentence, requesting that the motion be held *sub curia* so that he could prove himself over time to be worthy of a downward modification. *Id.,* Exhibit 25. This motion was summarily denied on May 9, 2005. *Id*., Exhibit 26.

(iii) Post-Conviction Proceedings

On April 2, 2007, McCullough initiated post-conviction proceedings in the Circuit Court for Baltimore County. *Id*., Exhibits 1 and 10. The petition, as amended and modified, alleged ineffective assistance of trial counsel for failing to argue that the sentence was disproportionate, failing to attend McCullough's interview conducted before the filing of the presentence report, and failing to present a mental health expert at sentencing. *Id*., Exhibit 12 at 13-14. McCullough also alleged ineffective assistance of appellate counsel for failing to argue that the sentence was disproportionate. *Id*. Following a hearing, the court denied relief by order dated March 21, 2008. *Id*., Exhibit 1 at 16-17 and Exhibit 12. McCullough sought leave to appeal to the Court of Special Appeals, alleging the Circuit Court had erred in holding that (1) the sentence was not disproportionate and (2) both trial and appellate counsel were not ineffective for failing to argue

5

disproportionality.  *Id*., Exhibit 13.  On September 25, 2008, the appellate court declined review in an unreported opinion.  *Id*., Exhibit 14.

## CLAIMS PRESENTED

McCullough now argues that:

1.  The trial court violated his Sixth Amendment right to a jury trial by
    sentencing him for crimes for which he was acquitted;

2.  The trial court violated his Eighth Amendment right to be free from
    cruel and unusual punishment by sentencing him to 100 years' imprisonment;

3.  Trial counsel provided ineffective assistance by failing to:
    (a) prepare for sentencing;
    (b) argue sentence disproportionality; and
    (c) challenge the inconsistent verdicts; and

4.  Appellate counsel was ineffective for failing to:
    (a) argue that his sentence was disproportionate; and
    (b) challenge the inconsistent verdicts.

Paper No. 1.

## THRESHOLD CONSIDERATIONS

### Exhaustion of State Remedies and Procedural Default

Under *Rose v. Lundy*, 455 U.S. 509 (1982), those petitioning for federal habeas corpus relief must first exhaust each claim by pursuing remedies available in state court.  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  *See* 28 U.S.C. § 2254(b)-(c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of  a post-conviction petition, followed by petitioning the Court of Special Appeals for leave to appeal.  McCullough no longer

has any state direct review or collateral review remedies available to him with respect to the claims raised in this Court; thus, his claims will be considered exhausted for the purpose of federal habeas corpus review.  *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

When a petitioner has exhausted remedies by initiating state direct or collateral review but has failed to complete those remedies (for example, by seeking certiorari as the last step in the direct review process or seeking leave to appeal the denial of post-conviction relief), the procedural default doctrine applies.  *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (failure to note timely appeal);  *Murray v. Carrier*, 477 U. S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post conviction relief).  The procedural default doctrine bars habeas corpus review of a claim absent a showing of cause and prejudice or actual innocence. *See Murray*, 477 U.S. at 495; *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977).  But even when a petitioner fails to show cause and prejudice for a procedural default,  a federal court must still consider whether it should reach the merits of the petitioner's claims to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U. S.298, 314 (1995).  The miscarriage of justice standard is directly linked to innocence.  *Id*. at 320.  The petitioner must show that a constitutional violation has probably resulted in the conviction of an innocent person.  *See Murray*,  477 U. S. at 496.

Respondents argue that Claim 1, Claim 3(a) and (c), and Claim 4(b) are subject to procedural default.  The undersigned concurs.  McCullough never presented Claim 1 (that he was sentenced based on crimes for which he was acquitted) in any state forum either on direct appeal or by way of post-conviction petition.  Claim 3(a), which alleges trial counsel failed to prepare

for sentencing, was presented at McCullough's post-conviction hearing, but was not pursued in his application for leave to appeal the denial of post-conviction relief.[2] Claims 3(c) and 4(b), alleging that trial and appellate counsel were ineffective for failing to argue that the jury's verdict was inconsistent, have never been presented in the state courts. Thus, unless McCullough can meet the "fundamental miscarriage of justice" exception to the default doctrine, these claims cannot be addressed on the merits in this forum.

McCullough contends he is "actually innocent" based on trial testimony and evidence. He argues that: (1) the four victims who were shot did not know who fired the shots that struck them; (2) the witnesses who identified him as one of the shooters are not reliable; (3) his only intent was to fistfight a classmate, and he could not control the fact that Brown pulled a gun out of a car and fired it into the crowd; (4) he could not have been the second shooter, because he had been taken to the ground by students who kicked and punched him; and (5) by acquitting him of all charges except assault, the jury clearly intended to suggest that he was not a shooter and did not plan the attack on his fellow students. Paper No. 23. In essence, McCullough attempts to establish "actual innocence" through reiteration of the defenses he presented at trial. This attempt fails, both as an impermissible tactic in the context of federal habeas corpus review, and on the merits, as the transcript unquestionably demonstrates that McCullough was the catalyst behind the crimes and a participant at the scene.[3]

---

[2] The application for leave to appeal the denial of post-conviction relief contained allegations that the Circuit Court erred in finding that the sentences were not disproportionate, and trial and appellate counsel were ineffective for failing to argue disproportionality. Paper No. 17, Exhibit 13.

[3] McCullough argues that the victims did not identify him as the shooter, the testimony of witnesses who identified him as the second shooter are suspect, and his witness, who testified to hearing gunshots fired from another weapon at a distant location, is more credible. The record demonstrates that Tipper Thomas, who was shot in the back of the neck while bending to aid a fallen classmate, never saw who

McCullough maintains his "innocence" on the ground that he did not fire the bullets that struck down his fellow students. He argues his convictions resulted solely from an erroneous jury instruction and improper closing argument concerning "aiding and abetting." *Id*. at 6-13. The propriety of the instruction[4] and argument were not raised on direct appeal or on state

---

shot him. Paper No. 25, Exhibit 30 at 94. Marcus McLain, who ran after seeing Brown shoot Thomas, likewise did not see his assailant. *Id*., Exhibit 30 at 98-99, 106. In contrast, student Jadah Green, who was on the parking lot near the BMW driven by "Fat Boy," observed the brawl from a distance of sixty feet, and was twenty feet away when the shooting began. Green, who ran for cover when the shooting began, looked up from his friend's car and saw McCullough "shooting in the air" in the direction of the school. *Id*., Exhibit 30 at 138, 149-150, 181-183. Devon Simmons, a teacher who saw McCullough standing with Brown and two other males, witnessed Brown shoot and hand the gun off to a male wearing a white tee shirt and blue jeans – clothing worn by McCullough as well as other members of his group that day. *Id.,* Exhibit 30, 200-201, 209-212, 218. Alexander Brown, who was shot in the shoulder, did not see McCullough with the gun. *Id*., Exhibit 30 at 231, 242. Helen Schneider, a teacher who was driving out of the parking lot, stopped after hearing three salvos of twelve to fifteen gunshots, dialed "911" and saw a slim-to-average sized male in a white tee shirt and baggy blue jeans raise his arm and fire a gun before placing the gun in his waistband and walking down the driveway. *Id*., Exhibit 30 at 279-282. Christine Curtis, a student parked near the BMW, identified McCullough as the second shooter. *Id*., Exhibit 31 at 50. Fellow student Barakat Fagbayi saw McCullough with the gun in his hand after the shooting ended. *Id*., Exhibit 31 at 64. Andre Mellerson, shot in the leg, did not see McCullough with the gun. *Id*., Exhibit 31 at 83. Hakeem Pipkin, a fourteen-year-old at the school to attend an evening dance, testified that when shots were fired, McCullough was being beaten up and was on the ground. *Id*., Exhibit 33 at 68, 73-75. Parent and school assistant Shirley Holley observed Brown reach into the BMW, bring out a gun, begin firing, and then reenter the car. She testified the second volley of shots originated "further away." Exhibit 34 at 48, 51, 54

[4] The instruction, as given, reads as follows:

> A person who aids and abets in the commission of a crime is as guilty as the actual perpetrator even though he did not personally commit each of the acts that constitutes the crime. A person aids and abets the commission of a crime by knowingly associating with the criminal venture with the intent to help commit the crime, being present when the crime is committed, and seeking,by some act, to make the crime succeed.

> In order to prove that the Defendant aided and abetted in the commission of a crime, the State must prove that the Defendant was present when the crime was committed, and that the Defendant willfully participated with the intent to make the crime succeed. Presence means being at the scene or close enough to render assistance to the other perpetrators. Willful participation means voluntary and intentional participation in the criminal act. Some conduct by the Defendant in furtherance of the crime is necessary. The mere presence of the Defendant at the time and place of commission of the crime are not enough to prove that the Defendant aided and abetted. But if presence is proven, it is a fact that may be considered along with all the surrounding circumstances….

collateral review and thus may not be examined here. While the jury did not convict McCullough of attempted murder or a handgun violation, there was sufficient evidence that he put events into motion that led to the school yard melee and resulted in the shooting of four students. The miscarriage of justice exception to the procedural default doctrine cannot be invoked given the facts of this case.

Review of McCullough's first claim alleging a violation of his Sixth Amendment rights due to improper reliance at sentencing on crimes for which he was acquitted is, therefore, waived in its entirety.[5] His third claim of ineffective assistance of trial counsel shall proceed as to the issue of counsel's failure to argue sentence disproportionality.[6] Similarly, consideration of his fourth claim concerning ineffective assistance of appellate counsel will be limited to the issue of

---

The Defendant is also charged with four counts of first degree assault, one for each victim. In order to convict the Defendant of first degree assault, the State must prove that the Defendant, or someone with whom the Defendant was aiding and abetting, caused physical harm to the victim, that the contact was the result of an intentional or reckless act of the Defendant and was not accidental, that the contact was not consented to by the victim or legally justified, and that the Defendant, or someone with whom he was aiding and abetting, used a firearm to commit the assault….

Paper No. 17, Exhibit 15 at 52-53. The State's closing argument referenced the jury instruction. *Id*., Exhibit 15 at 61-78.

[5] In any event, this argument fails. The maximum penalty for first-degree assault under Maryland law is 25 years incarceration. *See* Md. Code Ann., Crim. Law § 3-202(b). The sentencing transcript makes clear that the four first-degree assault convictions were the only crimes for which McCullough was sentenced.

[6] The issue of inconsistency in the verdicts was not properly presented in the state courts at trial, on direct appeal, or in the post-conviction proceedings. In his application for leave to appeal the denial of post-conviction relief, McCullough's attorney, in an attempt to downplay his client's role in the incident, penned one sentence stating the jury verdict was inconsistent based on trial testimony that while one witness testified that McCullough fired the gun in the air, others were unable to identify anyone other than Brown as the shooter. *See* Paper No. 8, Exhibit 13 at 11. The application for leave to appeal the denial of post-conviction relief centered solely on arguments supporting the contention that McCullough's sentence was disproportionate and constitutionally impermissible.

sentence disproportionality.

## STANDARD OF REVIEW

The federal habeas statute, 28 U.S.C. § 2254, as amended, provides a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). McCullough's non-defaulted claims shall be considered in light of this standard.

## ANALYSIS

(i)     Eighth Amendment Violation Based on Length of Sentence

McCullough contends that his sentence violates his Eighth Amendment right to be free from cruel and unusual punishments. Paper No. 1 at 8-9. He argues, as did post-conviction counsel, that his youth, lack of prior criminal history, acquittal on all but the four assault charges, the lesser sentence imposed on the other shooter, Brown, and the fact that McCullough was the only offender in the Maryland Sentencing Commission database to receive such a sentence for assault, demonstrate the disproportionate nature of the 100-year aggregate sentence.

Although outside the guideline range, McCullough's sentence for each of the four convictions did not exceed the statutory maximum punishment for the crime of first-degree assault. McCullough does not complain about the imposition of a 25-year sentence for each

11

assault conviction; rather, his arguments center on the fact that the sentences imposed are to be served consecutively, thus making it unlikely that he will be considered for parole for several decades.

The Eighth Amendment's Cruel and Unusual Punishments Clause "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *See Solem v. Helm*, 463 U.S. 277, 284 (1983).[7] In the context of non-capital cases, the Eighth Amendment has a "narrow proportionality principle." *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (mandatory life imprisonment for conviction of drug possession by first-time offender without consideration of mitigating factors did not violate Eighth Amendment). The Eighth Amendment forbids only extreme sentences that "are 'grossly disproportionate' to the crime." *Id.* at 1001."[8]

The Fourth Circuit has held that "proportionality review . . . is not available for any sentence less than life imprisonment." *United States v. Malloy*, 568 F.3d 166, 180 (4th Cir.

---

[7] A sharp divide exists among the current Justices with regard to proportionality review, both with regard to whether and how to apply it. Justice Scalia strongly contends that the Eighth Amendment's prohibition of "cruel and unusual punishments" was aimed at excluding only certain modes of punishment and was not a guarantee against disproportionate sentences. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957 , 984-85 (1991) (mandatory sentence required in non-capital case); *Ewing v. California*, 538 U.S. 11, 31 (2003) (enhanced term of imprisonment under "three-time loser" statute for recidivist convicted of felony theft of three golf clubs). Justice Thomas concurs with Justice Scalia's analysis. *Ewing*, 538 U.S. at 32. Justices Breyer, Stevens and Ginsburg state that courts faced with a "gross disproportionality" claim must first make a "threshold comparison of the crime committed and the sentence imposed," and if it crosses that threshold, the courts should compare the sentence at issue to other sentences "imposed on other criminals" in the same or in other jurisdictions. *Ewing,* 538 U.S. at 36; *Harmelin*, 501 U.S. 1005; *see also Solem v. Helm*, 463 U.S. 277, 290-91 (1983).

[8] Two earlier cases in this Circuit had left open the question of whether proportionality review is appropriate for sentences of less than life without the possibility of parole. *See Sutton v. Maryland*, 886 F.2d 708, 712 (4th Cir. 1989); *United States v. Rhodes*, 779 F.2d 1019, 1027-28 (4th Cir. 1985). The issue was foreclosed in *United States v. Polk,* 905 F.2d 54, 55 (4th Cir. 1990), wherein the Fourth Circuit, citing *United States v. Whitehead,* 849 F.2d 849, 860 (4th Cir. 1988), held that proportionality review is not available for any sentence less than life imprisonment without the possibility of parole.

2009). Thus, McCullough's sentence is not subject to review. Moreover, the disparity at issue here focuses on the consecutive nature of the sentences imposed. The Eighth Amendment, however, focuses on the sentence imposed for each specific crime, and not on the cumulative sentence imposed for multiple crimes. *See United States v. Ming Hong*, 242 F.3d 528, 532 (4th Cir. 2001) (citing *Hawkins v. Hargett*, 200 F.3d 1279, 1285 n.5 (10th Cir. 1999)). McCullough is serving consecutive sentences, each imposed at the maximum term allowed by law, and each imposed for an assault upon separate individuals, from which he may be paroled. His circumstances do not implicate the Eighth Amendment and, accordingly, relief is denied as to this claim.

(ii) Claims of Ineffective Assistance of Trial and Appellate Counsel

Ineffective assistance claims are reviewed under the two-part test established in *Strickland v Washington,* 466 U.S. 668 (1984); *see also Bell v. Cone*, 535 U.S. 695, 698-99 (2002) (explaining the interplay between *Strickland* and 28 U.S.C. § 2254(d)). To establish ineffective assistance of counsel, it must be shown that (1) counsel's deficient performance (2) prejudiced the defense. *See id.* at 687. Representation is deficient if it falls below "an objective standard of reasonableness." *Id*. at 688. It must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id* at 687. The standard of review for assessing such competence is "highly deferential" and there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."*Id*. at 669. To prevail, the petitioner must overcome the presumption that the challenged action is "sound trial strategy." *Id*. at 689.

A showing of prejudice requires that (1) counsel's errors were so serious as to deprive the

defendant of a fair trial whose result is reliable and (2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See id.* at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697. In the § 2254 context, a petitioner must show that the state court applied *Strickland* to the facts in an objectively unreasonable manner. *See Bell*, 535 U.S. at 698-99; *Williams,* 529 U.S. at 405.

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if a petitioner can "establish....that counsel omitted significant and obvious issues while pursing issues that were clearly and significantly weaker....Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). A defendant, however, has not necessarily received ineffective assistance when his counsel fails to present every non-frivolous issue on appeal. An attorney may decline to appeal a non-frivolous but weaker issue if doing so would have the effect of diluting stronger arguments on appeal.[9] *See Jones v. Barnes*, 463 U.S. 745, 752 (1983).

---

[9]   Appellate counsel cannot be found deficient for failing to present meritless issues and  issues not preserved for appellate review.  *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (strategic and tactical choices regarding the best issues to pursue on appeal "are properly left to the sound professional judgment of counsel"); *Smith v. Murray*, 477 U.S. 527, 534 (1986) (decision to forego a claim that has "little chance of success" does not amount to ineffective assistance of counsel).

McCullough's post-conviction counsel argued that trial and appellate counsel were ineffective because they did not use supporting statistical data to argue sentence disproportionality in post-trial and appellate review. Paper No. 17, Exhibit 15 at 19-22, 25. Examination of the post-trial filings prepared on McCullough's behalf seeking review of sentence and sentence modification, as well as the briefs prepared on direct appeal, reveals that counsel did argue, albeit unsuccessfully and without statistical data, that the sentences were disproportionate under Maryland law. *Id*., Exhibit 23 at 3, 6-10, 12 and Paper No. 8, Exhibit 2 at 33-34. The post-conviction court reasoned as follows:

> Petitioner argues that:
>
> Trial and appellate counsel were ineffective for not raising the issue of sentencing disparity in McCullough's Motion for Modification of Sentence, Motion for Review of Sentence by a Three-Judge Panel, Motion for Reconsideration, and appeal to the Court of Special Appeals. Had the issue been raised by comparing McCullough's sentence to other sentences in and out of State, the sentence would have been vacated
>
> ….
>
> *Thomas v. State*, 333Md. 84, 634 A.2d 1 (1993) and *Epps v. State*, 333 Md. 121, 634 A.2d 20 (1993) [state] that the threshold inquiry [in a proportionality challenge] is not whether a sentence is disproportionate to other sentences in cases where the defendant is convicted of the same crime, but rather whether the sentence is grossly disproportionate to the crime committed. *See Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). *See also Minor v. State*, 313 Md. 573, 546 A.2d 1028 (1988) and *State v. Davis*, 310 Md. 611, 530 A.2d 1223 (1987). The initial inquiry, in other words, is whether a given sentence is grossly disproportionate to the offense itself, not, as Petitioner suggests, disproportionate to "sentencing data that would have shown [Petitioner's] one hundred year sentence to be one of the harshest sentences on record for a first degree assault conviction." Petition for Post-Conviction Relief, p.10. Also, it is important to note that the Court of Appeals has predicted in this line of cases that impermissible disproportionality will and shall be "rarely" found. *See, Ayers v. State*, 335 Md. 602, 639-640, 645 A.2d 22 (1994) citing *Thomas*, *supra*.

….

 As to the scope of the threshold inquiry, it is defined in *Thomas, supra*, as follows:

> In considering a proportionality challenge, a reviewing
> court must first determine whether the sentence appears to be
> grossly disproportionate. In doing so, the court should look to
> the seriousness of the conduct involved, the seriousness of any
> relevant past conduct as in the recidivist cases, any articulated
> purpose supporting the sentence, and the importance of
> deferring to the legislature and to the sentencing court.

*Thomas, supra*, 333 Md. at 95, 634 A.2d at 6.

In *Thomas*, the Court of Appeals held that a twenty (20) year jail term imposed on the defendant for a single count of common-law battery was grossly disproportionate to defendant's offense in slapping his wife on the face. In *Epps, supra*, the Court held that a twenty (20) year jail term imposed upon a defendant, who was an inmate at the time of the offense, for "projecting a small amount of water onto the person and clothing of a jail guard", was grossly disproportionate. Reading these cases together, it is clear that the Court's teaching is that a sentence can be deemed grossly disproportionate when the nature of the offense is relatively minor (a slap, or projecting water onto another) and the sentence imposed is harsh and significant (20 years).

The inquiry here is whether Mr. Dixon or Mr. Janey was deficient in failing to think to assert, in post sentencing pleadings, that Judge Cavanaugh's sentence was grossly disproportionate to the crimes committed by the Petitioner. To make this determination, the Court must examine whether a reasonable defense attorney in the position of Mr. Dixon or Mr. Janey would have necessarily concluded, after applying the four *Thomas* factors to these facts, that there was *any* chance of convincing any judge that this sentence was grossly disproportionate to the crime.

The first, and most important of these factors is the "seriousness of the offense." Initially, it should be noted that the parties take divergent positions on what exactly the jury determined in this case, what, in other words, the exact "offense" was. In its Post-Hearing Memorandum, the State asserts that the Petitioner "shot and seriously injured four students at Randallstown Senior High School on May 7, 2004." The Petitioner asserts, in his Reply, that:

the truth is that no witness testified to seeing McCullough shoot anybody. There is no evidence that McCullough was

'firing on the crowd,' as the State argues. Nor was McCullough 'the mastermind' — as the State baldly asserts without any citation to the record. Rather, from the trial transcript, it is clear that it was Tyrone 'Fat Boy' Brown who injured the four Randallstown students ...

Whatever arguments might be made as to what the jury did or did not conclude, the evidence manifestly supports the statement of facts set forth by the Court of Special Appeals in its opinion in the direct appeal of this case. Those facts are that Tyrone Brown, and then Petitioner, fired a total of twelve (12) shots, from a 9mm Glock pistol into a crowd of some thirty (30) or forty (40) innocent students who were assembled on the occasion of a charity basketball game at Randallstown between a faculty team and a team of community leaders. When the shooting started, chaos ensued, which resulted in some restriction on the ability of eyewitnesses to see everything that occurred. While it is true that no witness testified to seeing the Petitioner fire a bullet into the body of one of the four students who was shot; while no witness was able to trace the path of a bullet shot by Petitioner into a victim; three students did affirmatively testify that they saw the Petitioner firing the gun in the direction of the high school building itself and of the students in front of the building. In addition, Helen C. Schneider, the teacher at Randallstown, who witnessed the shooting testified as follows:

QUESTION: Okay. And you pulled over there for what purpose?

ANSWER: To dial 911 again. I thought at the point I thought it best to, stop driving cause I was trying to drive and I — the gun shots I think made me quite excited. I also thought that it was important for me to look to see what was happening. I was in safety of my car so I felt that I could look over to the school. You know, those are my kids. So I continued to dial 911. And that's when I looked up the driveway.

QUESTION: Okay.

ANSWER: So I parked trying to get 911 to answer, but it was busy.

QUESTION: Alright. And when you looked up the driveway, tell the ladies and gentlemen of the jury what you saw.

ANSWER: I saw a young man standing with his back towards me with a gun in his right hand with his gun pointing towards the school and towards students and firing.

QUESTION: Do you recall how many shots he fired?

ANSWER: I heard a total of 12 to 15 in the span of three different groups of shooting of the gun. I heard three separate groups of gunshots totaling I think 12 to 15 ...

* * *

QUESTION: And tell us what you saw in those seconds in those second two sets of gunshots?

ANSWER: Alright. I saw a young man standing again with his back to me and outstretched arm firing.

QUESTION: About how many times?

ANSWER: If I had to guess, five-four, five, something like that. Then put his hand down, then raised again and a second set of shots ...

* * *

QUESTION: Can you describe for the ladies and gentlemen of the jury how the person was dressed, who you saw firing these shots?

ANSWER: My recollection at the time was that he was wearing baggy blue jeans and a long white tee-shirt.

QUESTION: Can you describe the person's build?

ANSWER: He was average to slight, not heavy, but you know, given with baggy pants, it's hard to tell exactly. But he was a slender to average sized person.

(November 16, 2004 trial testimony, pp. 279-281)

Without question, this independent witness identified the Petitioner as one of the two persons who fired the 9mm handgun at the crowd of students on May 4, 2004.

As to the other *Thomas, supra*, factors, while the Petitioner is not a "recidivist", Judge Cavanaugh had a very definite "articulated purpose" in fashioning this sentence (see p. 28, *supra*) which was owed deference by trial and appellate counsel in their thinking as to whether this sentence was challengeable on a gross proportionality basis. Finally, of course, counsel would have been required to defer, in their thinking, to the legislature in light of the fact that these sentences were statutorily authorized.

Under the circumstances, this Court is required to reach a determination as to whether or not it was a deficiency in the Petitioner's representation that neither Mr. Dixon or Mr. Janey thought to raise or articulate the issue of gross disproportionality with Judge Cavanaugh in the Motion to Revise; with the three judge panel or with the Court of Special Appeals. The Court finds that, given the heinous and atrocious nature of this school shooting, there would be no reason for any reasonable practitioner to have concluded that it would be prudent or effective to have raised these issues with any of the judges who have passed upon the sentence in this case to date. This is not a case of slapping a spouse, or projecting liquid onto the leg of a jail guard. This sentence was a result of the Petitioner committing the almost unimaginable act of repeatedly firing a weapon into a group of innocent students on public school property, resulting in serious injury to four (4) of them who just happened to be at the wrong place at the wrong time. It is difficult to envision a worse set of facts facing trial or appellate counsel. Under all of the circumstances, it was not a deficiency in their representation to have failed to assert or re-assert that maximum sentences were inappropriate because they were unduly harsh.

Moreover, even if the Petitioner was to receive the benefit of the doubt in analyzing the "deficiency" prong under *Strickland*, this Court is satisfied that the Petitioner has not established prejudice under the second prong of that authority. After analyzing Judge Cavanaugh's rationale for imposing his sentences, it is absurd in the extreme to suggest that he would have granted a motion to revise the sentence based on the argument that it was "disproportionately harsh." Likewise, there is no reason to think that the three judge panel would have magically concluded that the Petitioner had crossed the gross proportionality threshold by simply employing the words "grossly disproportionate." In effect, in the application for review of sentence, marked Plaintiff's Exhibit 2, Petitioner *did* argue his sentence was grossly disproportionate:

In addition, my sentencing guidelines for my convictions of four counts of First Degree Assault with no prior convictions were five to ten years on each count of First Degree Assault. The Honorable Patrick Cavanaugh sentenced me to fifteen years above the maximum sentencing recommendation on each count I was convicted of and gave me a sentence of twenty-five years on each of the four counts of First Degree Assault, despite the fact that a co-defendant in this case pled guilty to Attempted Second Degree Murder and admitted to actually shooting a gun and the same judge sentenced that individual to fifty years in prison. What makes my sentence more unconscionable is that the Honorable Judge Patrick Cavanaugh gave no weight to the fact that a jury found me Not Guilty of Attempted Second Degree Murder and Not Guilty of Handgun in the Commission of a Felony thereby precluding any inference that I shot anyone during the tragic

fight for which I was convicted ... At the time of this incident I was seventeen years old. At the time of my sentencing I was still seventeen years old. Judge Cavanaugh's one hundred year sentence of me is essentially a life sentence in this matter and it is my belief that such a sentence is unconscionable and not justified ...

This Court finds that the determination of the three-judge panel would not have been different had the Petitioner simply raised the above argument and used the language of Eighth Amendment or Article 25 jurisprudence in connection therewith.

Finally, in light of the language employed by the Court of Special Appeals in the last line of its opinion ("We would have been shocked if Judge Cavanaugh had not departed from the guidelines. We see no remote error)", this Court cannot find that the Petitioner suffered any prejudice from the failure to use the "grossly disproportionate" language in the cruel and unusual punishment argument that it did advance on direct appeal. In sum, this Court concludes that neither trial nor appellate counsel exercised "unreasonable professional judgment falling below an objective standard of reasonableness, considering prevailing professional norms", *State v. Tichnell, supra*, 306 Md. at 452 in failing to specifically articulate a gross disproportionality argument. Maximum sentences for these assaults were not at all out of line given the nature of the offenses. Since a gross proportionality argument would not have gotten past the threshold inquiry, no comparison to other sentences would have been in order.

Paper No. 17, Exhibit 12 at 32-42. The state court's ruling survives scrutiny under 28 U.S.C. § 2254(d), as the court's rejection of McCullough's instant ineffectiveness claims was not an unreasonable application of *Strickland* and its progeny. Further, under existing Supreme Court precedent, the consecutive sentences imposed do not run afoul of the Eighth Amendment. McCullough is not entitled to relief on his ineffective assistance of counsel claims.

For reasons stated herein, the Court will deny the Petition as well as a Certificate of Appealability.[10]  A separate order follows.


April 20, 2010                                   _____/s/_____
Date                                              William D. Quarles, Jr.
                                                  United States District Judge

---

[10] There is no absolute entitlement to appeal a district court's final order in a habeas corpus proceeding. *See* 28 U.S.C. § 2253(c) (1). "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).